## HARMON ROWLEY *vs.* CALEB RICE.

T. mortgaged all the goods in his store to R., together with all the goods which he might subsequently purchase for carrying on his trade, to secure payment of certain promissory notes: R. afterwards took possession of the store, and all the goods therein, as well those which were purchased by T. after the mortgage was made, as those which were there when it was made, under an agreement between him and T., that he should sell the goods, pay his own notes out of the proceeds, and account to T. for the surplus. *Held*, that this transaction was not fraudulent *per se*, and that it was for the jury to decide whether it was *bona fide*, or with a fraudulent intent. *Held also*, that although R. and T. did not actually contemplate any thing more than to perfect a supposed valid title under the mortgage, yet if they intended that R. should hold the goods for the security of his debts, and if the transaction was *bona fide*, his title to the goods enured by way of pledge, for the purpose of effectuating such intention.

THIS was an action of trover against the sheriff of Hampden, to recover the value of certain goods attached by his deputy, Elisha Adams, on the 19th of June 1842, upon a writ sued out by David Clark against William L. Tingley. The new trial, which was ordered at the last September term, (10 Met. 7–13,) was had before *Wilde*, J., when it appeared in evidence that said Tingley, on the 26th of January 1841, mortgaged to the plaintiff all the goods in his (Tingley's) store at Chicopee Falls, to secure payment of six promissory notes, payable on demand; that a schedule of the goods was annexed to the mortgage; and that the mortgage also contained the following clause: " Together with all the goods and merchandize which I may hereafter purchase for carrying on said trade, to supply the deficiency created by any sales in the security to the said Rowley hereby intended to be given."

It also appeared, that on the 11th of January 1842, the plaintiff demanded payment of the aforesaid notes, and, in default of payment, claimed the stock of goods then in Tingley's store, by virtue of his mortgage; that Tingley denied the

plaintiff's right to the goods, unless he would give up the notes, which the plaintiff refused to do, until he should receive his pay, and claimed a right to the goods under the mortgage without giving up the notes; that the plaintiff, after being advised by counsel, whom he and Tingley consulted, that he had a right to the goods, and to retain the notes till they should be paid in full, from the proceeds of the goods, or otherwise, took possession of the store and goods, with Tingley's consent; agreed to account with Tingley for any surplus that might remain, after paying the notes; commenced making sales of the goods; and continued his possession till the time of the attachment by Adams.

It further appeared that the greater part of the goods, taken by the plaintiff, and attached by Adams, as aforesaid, were purchased by Tingley, at various times, after the date of the mortgage. The defendant contended that the plaintiff could not hold these goods, by virtue of his mortgage and possession under it, and that, in order to recover for them, he must prove some contract of pledge or sale, distinct from the mortgage. Whereupon the judge ruled, that although the parties did not actually contemplate any thing more than to perfect what they supposed to be a valid title to the plaintiff, under the mortgage, yet if they intended that the plaintiff should hold the goods for the security of his notes, his title to the goods would enure, by way of pledge, for the purpose of effectuating such intention — the title, by virtue of the mortgage, being defective; and that the plaintiff was entitled to recover the value of the goods, if the mortgage and all the proceedings were *bona fide*, and not fraudulent.

There was evidence tending to prove that, when the mortgage was made, Tingley was not solvent, and was deeply indebted to said Clark and other persons; that he had no property besides that which was mortgaged, and which was little more than sufficient to pay the plaintiff's notes; that the plaintiff was well informed of Tingley's condition, and that it was agreed between him and Tingley, that Tingley might continue in trade as long as the plaintiff should permit him to

do so, and that he might sell any part of the goods, without any restriction as to the amount of his sales or the disposition of the proceeds; and that, as fast as he should purchase new goods, either on credit or for cash, they should be held by the plaintiff, under the mortgage; that Tingley continued in trade, after this, till most of the mortgaged goods were sold, and in the mean time increased his debts for goods that he purchased and added to his stock, and especially his debt to Clark, which was upward of $1300, at the time of the aforesaid attachment on Clark's writ.

The defendant contended that this mortgage and arrangement, if the jury believed the evidence, were fraudulent *per se*. But the judge ruled otherwise, and instructed the jury, that it was wholly for them to decide whether the mortgage was fraudulent or not, upon consideration of the whole evidence.

The jury returned a verdict for the plaintiff. Judgment to be entered thereon, if the instructions were correct; otherwise, a new trial to be ordered.

*R. A. Chapman & Ashmun*, for the defendant, cited 4 Kent Com. (3d ed.) 138. Story on Bailm. §§ 287, 317. *Homes* v. *Crane*, 2 Pick. 610. *Greene* v. *Dingley*, 11 Shepley, 131. *Jarvis* v. *Rogers*, 15 Mass. 414.

*J. Willard*, for the plaintiff, was stopped by the court.

SHAW, C. J. The plaintiff claimed the goods by virtue of a prior mortgage of them by Tingley to him. The mortgage given to secure the payment of notes purported to include not only the goods then in his store, but such as he might afterwards purchase. After the notes became due, the plaintiff claimed the right to take possession. This, at first, was resisted by Tingley, the debtor, on another ground, to wit, that he could not take possession of the goods, without at the same time surrendering his notes. This point having been yielded by Tingley, there is evidence to show, that by an arrangement made between the plaintiff and Tingley, the plaintiff took possession of all the goods, as well those after purchased, as those existing at the time of the mortgage, under an agreement

that he should sell the same, pay his own notes out of the proceeds, and account to Tingley for the surplus. The judge, who tried the case, instructed the jury, that though the parties did not actually contemplate any thing more than to perfect a supposed valid title under the mortgage, yet if they intended that the plaintiff should hold the goods for the security of his debt, his title to them would enure by way of pledge, for the purpose of effectuating such intention, and that the plaintiff would be entitled to recover the value, if the proceeding was *bona fide*, and not fraudulent. The question of fraudulent intent was rightly left to the jury, and was negatived by them.

Now, supposing the original mortgage was invalid to bind after purchased goods, (*Jones* v. *Richardson*, 10 Met. 481,) yet we are of opinion that the above direction was right.

This agreement and the delivery of the goods to the plaintiff took place before the attachment was made in behalf of a creditor, after Tingley had purchased and received the goods, and had a full disposing power over them. The facts show all the elements of a new, distinct and substantive agreement to hypothecate the after acquired goods, sufficient of itself to give title to the plaintiff. There was title and possession in Tingley, an agreement that the goods should go into the possession of the plaintiff, to be sold, and the proceeds applied to the payment of his debt, and the plaintiff to account to him, and pay over the surplus, if any; and this was followed by an actual delivery, before the attachment. The fact, that the parties acted under a mistaken belief that the plaintiff had a good title to these goods, under the mortgage, does not invalidate another good title, of itself sufficient. Such is commonly the case, when an act is held to operate as a ratification or confirmation of some proceeding, doubtful, voidable or void. If the act, to which it is applied, is voidable only, then it enures by way of ratification; if actually void, and the subsequent act is of itself sufficient, it enures as an original act.

It was argued, that if the latter transaction was available at

all, it must be by way of pledge, and not as a mortgage. But if, as the evidence of the terms of the agreement tends to show, it was accompanied with an express power of sale, it becomes unnecessary to consider, with critical exactness, whether it operated in law as a pledge or a mortgage. In either case, the plaintiff would have a right to hold the goods against the attaching creditor of the mortgagor; and such attachment was a conversion.

*Judgment on the verdict for the plaintiff.*